IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE BROOKS, | ) | CASE NO. 1:16CV01017 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| LaSHANN EPPINGER, Warden | ) | |
| | ) | |
| | ) | |
| | ) | **REPORT AND** |
| Respondent. | ) | **RECOMMENDATION** |

On April 28, 2016, Petitioner Dwayne Brooks ("Petitioner"), a prisoner in state custody, filed the instant petition through counsel under 28 U.S.C. § 2254 seeking a Writ of Habeas Corpus ("Petition"). (Doc. No. 2). The Petition is Petitioner's numerically second petition, as Petitioner previously presented a habeas challenge to his state court judgment of conviction. On October 15, 2001, he was denied habeas relief in *Brooks v. Money*, Case No. 1:00-CV-2395 (N.D. Ohio). Petitioner now maintains he is entitled to habeas relief based on actions of the Ohio Parole Board which followed the initial denial of habeas relief.

Pending before the Court is Respondent Warden LaShann Eppinger's Motion to Dismiss filed June 24, 2016. (Doc. No. 6). Petitioner has submitted a response in opposition. (Doc. No. 7). This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2) and General

Order 2016-19.[1] For the reasons that follow, the undersigned recommends that the Respondent's motion to dismiss be granted.

## I. Background

### A. The Underlying Conviction and Appeals

In May 1988, a Cuyahoga County grand jury indicted Petitioner on one count of aggravated murder with gun and mass murder specifications (Count 1); two counts of attempted aggravated murder with gun specifications (Counts 2 and 3); and one count of aggravated robbery with gun specifications (Count 4). (Doc. No. 2-4 at 1). On December 8, 1988, a jury found Petitioner guilty of aggravated murder with a mass murder specification, guilty of both counts of attempted aggravated murder, guilty of aggravated robbery, and not guilty as to all gun specifications. (Doc. No. 2-4 at 4). On December 15, 1988, upon recommendation of the jury, the trial court sentenced Petitioner on Count 1 to a term of life imprisonment, without the possibility of parole until petitioner served 20 years. (*Id.*) For Counts 2, 3, and 4, Petitioner was sentenced to three concurrent terms of 5 to 25 years, to be served consecutive to the term imposed on Count 1. (*Id.*) The conviction was affirmed on direct appeal, *State v. Brooks*, No. 57034, 1991 WL 1494, at *1 (Ohio Ct. App. Jan. 10, 1991), and on February 18, 1992, the Ohio Supreme Court denied jurisdiction.

Throughout the 1990s and into the 2000s, Petitioner unsuccessfully challenged his judgment of conviction through various collateral means in state court (the details of which are

---

[1]General Order 2016-19 referred to Magistrate Judge Jonathan D. Greenberg cases that had been previously referred to the recently retired Magistrate Judge Nancy A. Vecchiarelli.

not relevant here).[2]

On September 19, 2000, Petitioner filed a Petition for the Writ of Habeas Corpus in the Northern District of Ohio challenging the constitutionality of the state court judgment of conviction.  *Brooks v. Money*, Case No. 1:00-CV-2395 (N.D. Ohio).  On recommendation of Magistrate Judge Patricia A. Hemann, and over objections of Petitioner, the Court denied the Petition as time-barred and, alternatively, as meritless.  (Doc. No. 6-1 at 3-29).  On May 5, 2003, the Sixth Circuit denied a Certificate of Appealability.  *Brooks v. Money*, Case No. 1:00-CV-2395, Doc. No. 34 (N.D. Ohio).  The U.S. Supreme Court denied certiorari on December 15, 2003.  *Brooks v. Money*, Case No. 1:00-CV-2395, Doc. No. 36 (N.D. Ohio).

---

[2]  On August 3, 1991, Petitioner filed a petition for postconviction relief and for new trial, which the trial court denied.  On March 10, 1994, the court of appeals affirmed.  *State v. Brooks*, Case No. 65088, 1994 WL 77738 (Ohio Ct. App. March 10, 1994).  The Ohio Supreme Court denied his appeal on August 31, 1994.  State v. Brooks, Case No. 1994-1131 (Ohio 1994). On July 27, 1994, Petitioner file a Motion to Vacate Journal Entry, which the Court of Appeals denied on May 11, 1995, in Case No. 57034.  The Ohio Supreme Court denied jurisdiction on October 18, 1995 in Case No. 1995-1158.

On May 19, 1998, Petitioner filed a Motion for New Trial.  The motion was denied on October 19, 1998, and on August 5, 1999, the court of appeals affirmed.  *State v. Brooks*, Case No. 75522, 1999 WL 588241 (Ohio Ct. App. August 5, 1999).  On November 10, 1999, the Ohio Supreme Court denied leave to appeal.  Case No. 1999-1594.  On November 1, 1999, Petitioner filed a Petition for Postconviction Relief, which was denied on December 12, 2001.  Petitioner filed a Motion for Leave to File Delayed Appeal, which was denied on November 19, 2002.  court of appeals, Case No. 81913.  On February 22, 2002, Petitioner filed a State Habeas Petition (filed in the Ohio Supreme Court as Case No. 2002-0327), which the court denied on April 3, 2002.  *Brooks v. Gansheimer*, 95 Ohio St.3d 1405, 2002-Ohio-5728.

**B. Proceedings before the Ohio Parole Board**

The instant, numerically second, habeas Petition challenges the constitutionality of actions taken by the Ohio Parole Board, which are described below, in pertinent part.

On September 19, 2005, the Ohio Parole Board held a hearing as to Petitioner's parole suitability. (Doc. No. 6-1 at 122; Doc. 2-2 at 6). The Parole Board considered the question of Petitioner's suitability for parole on the merits, and found him unsuitable for release. He was continued until September 2015. (Doc. No. 6-1 at 122).

On February 22, 2010, the Ohio Department of Rehabilitation and Correction (ODRC) decided that the September 19, 2005 hearing had been held in error and issued a "correction." (Doc. No. 2-2 at 5). A document generated on that date by the ODRC indicates that Petitioner's aggravated murder sentence "is 20 *full* years per ORC." (Doc. No. 2-2 at 5) (emphasis added). Because Petitioner was sentenced to 20 full years in 1988, the ODRC reasoned, Petitioner would not be eligible for earned credit until his minimum sentence expired on June 12, 2008. (*Id.*). The ODRC indicated that it would "[n]otify [the] Parole Board" that the "inmate already had [his] first hearing in error." (*Id.*).

On June 9, 2011, the Parole Board recorded "special minutes" stating that based on the evidence of a "clerical error" presented to it by the ODRC, the September 19, 2005 hearing and decision were "rescinded." (Doc. No. 2-2 at 6). Another hearing was scheduled, and, on October 11, 2011, the Board considered Petitioner's parole suitability and found him unsuitable for release, reasoning that

> The i/m is serving a 25 to Life Sentence for Att. Murder, Agg. Murder and Agg. Robbery. In 1987, the i/m, along with two accomplices, did an drive-by shooting. Three males were shot. One of them died, The i/m has served 280 months. Considering the nature of the crime, the inmate presents an unacceptable risk to the community, and is not

suitable for release onto parole supervision at this time.

(Doc. No. 2-2 at 4). Another hearing was scheduled for 2015. (Doc. No. 2-2 at 4).

On August 17, 2015, and the Board held a parole hearing and again found Petitioner unsuitable for release, reasoning that

> Offender Brooks has served over 27 years on his current conviction of Attempted Murder, Aggravated Robbery and Aggravated Murder which were horrific and senseless acts. His release plan is under developed. He has engaged in some risk relevant programing, however fails to share insight into such programing. As well , he shares no remorse for his actions. The Central Office Board Review has determined that release at this time would not further interest of justice due to the serious nature of the offense and would place the safety and security of society in jeopardy.

(Doc. No. 2-2 at 2). Petitioner was continued until July 2020. (*Id.*)

### C. State Court Challenges to the Decisions of the Parole Board

On August 18, 2011, Petitioner filed a state habeas petition as an original action in the Ohio Court of Appeals. (Doc. No. 6-1 at 32). Petitioner argued that the Parole Board improperly denied him good time credit and enhanced his minimum sentence from "20 years" to "20 full years." On September 2, 2011, the court of appeals dismissed his petition on the ground that Petitioner failed to properly support his application for indigency status. ( Doc. No. 6-1 at 47). Reconsideration was denied on October 3, 2011. ( Doc. No. 6-1 at 49).

On January 5, 2012, Petitioner moved the trial court to "Correct Clerical Mistakes in the Judgment Order." (Doc. No. 2-4 at 9). On April 4, 2012, the motion was denied. (Doc. No. 2-4 at 10). Petitioner appealed, and the decision of the trial court was affirmed. *See State v. Brooks*, Case No. 2012-Ohio-5292, 2012 WL 5555164 (Ohio Ct. App. November 15, 2012).

On December 9, 2013, Petitioner filed another state habeas corpus action as an original action in the Ohio Supreme Court.  (Doc. No. 6-1 at 54).  Petitioner argued, as he did in his previous state habeas petition, that the Parole Board improperly denied him good time credit and enhanced his minimum sentence from "20 years" to "20 full years."  On March 12, 2014, the court "considered [the petition] in a manner prescribed by law," and dismissed the petition *sua sponte*.  (Doc. No. 6-1 at 81).

On March 31, 2014, Petitioner filed a third state habeas corpus petition as an original action in the Ohio Court of Appeals.  (Doc. No. 6-1 at 82).  Petitioner argued as he had previously that the Parole Board had improperly enhanced his sentence of 20 years to life.  On August 15, 2014, the court of appeals dismissed the petition on res judicata grounds.  (Doc. No. 6-1 at 114).  On July 14, 2015, the Ohio Supreme Court affirmed.  (Doc. No. 6-1 at 117).

### D. The Instant Petition for the Writ of Habeas Corpus

Petitioner maintains that the Parole Board unconstitutionally enhanced his sentence by unilaterally extending Petitioner's sentence beyond the sentence imposed by the trial Court (Doc. No. 2 at 8); and that the Board unlawfully denied his initial parole board hearing which should have been held in 2005 based on his "good time" he was to receive pursuant to Ohio law, R.C. § 2967.13.  Petitioner maintains he is entitled to release from state custody.  (Doc. No. 2 at 14)

### II. Law and Argument

### A. Whether the Petition is Second or Successive Requiring Circuit Authorization

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2244, a state prisoner may not file a second or successive habeas petition without first seeking authorization from the appropriate court of appeals.  28 U.S.C. § 2244(b); *In re Bowen*, 436 F.3d

699, 704 (6th Cir. 2006). However, "the Supreme Court has made clear that not every numerically second petition is 'second or successive' for purposes of AEDPA." *Bowen*, 436 F.3d at 704 (citing *Slack v. McDaniel*, 529 U.S. 473, 487 (2000)). "[A] numerically second petition is 'second' when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).

Here, Petitioner's Petition is not "second or successive." His claim relates to the Parole Board's 2005 and 2011 decisions denying his parole. Because the factual predicate for his claims arose after September 19, 2000, the date when his first habeas petition was filed, his claims could not have been raised in the first petition. *See In re Jones*, 652 F.3d 603, 605-06 (6th Cir. 2010) ("limitations on second or successive petitions do not apply to a numerically second petition challenging a parole determination or disciplinary proceeding that occurred after the prisoner's initial petition was filed."). The undersigned accordingly concludes that Sixth Circuit authorization is not required in this case.

### B. Statute of Limitations

AEDPA provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. Under 28 U.S.C. § 2244(d), the limitation period runs from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the

> Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d). The statute further provides at § 2244(d)(2) that the "time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted against" the one-year period.

In the context of a challenge to a denial of parole, the one-year statute of limitations begins when a petitioner could have discovered the factual predicate of his claims through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); *See Ali v. Tenn. Bd. of Pardon and Parolees*, 431 F.3d 896, 898 (6th Cir.2005) (limitations period for habeas challenge to a denial of parole begins pursuant to 28 U.S.C. § 2244(d)(1)(D)). The factual predicate in this instance is Petitioner's denial of parole. *See Ali*, 431 F.3d at 898. However, in the Sixth Circuit, it appears to be an open question as to when the denial occurs, and the limitations period begins running, for purposes of § 2244(d)(1)(D). In *Ali*, a panel of the Sixth Circuit noted that there are two possibilities: "One possibility is the conclusion of state judicial review of the parole denial," and the "only other logical possibility is the (earlier) final administrative determination to deny parole." *Id.* In *Ali*, the court of appeals determined that it was not necessary to decide which was proper, since Petitioner was timely under either scenario.

This Court likewise need not decide that issue here, because the answer is the same in both scenarios: the Petition was untimely filed. First, if it is assumed that "the factual predicate of the claim" in Petitioner's case was the administrative denial of parole, then the limitations period began to run on June 9, 2011. It is also assumed, arguendo, that Petitioner's first state

8

habeas petition was "properly filed" and tolled the limitations clock.  Starting June 9, 2011, the clock ran for 71 days up to the filing of his first state habeas petition.  The clock restarted on October 4, 2011, when state habeas proceedings concluded, and ran out 294 days later, on July 23, 2012.  Petitioner filed two more collateral actions after this date, but these the pendency of these filings do not provide tolling, because "[t]he tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  Therefore, Petitioner's federal petition filed April 28, 2016 was untimely, by more than three (3) years.

Next, assuming the second scenario proposed by the Sixth Circuit in *Ali*, the limitations period would have started at the conclusion of judicial review of the administrative denial of parole.  Here, Petitioner filed three separate, nearly identical state habeas petitions in three separate state courts seeking review of the administrative decision:

(1)     An original petition filed on August 18, 2011 in the state court of appeals (Doc. No. 6-1 at 32), which was dismissed on September 2, 2011.  (Doc. No. 6-2 at 47).  The court denied reconsideration on October 3, 2011 (Doc. No. 6-1 at 49);

(2)     An original petition filed on December 9, 2013 in the Ohio Supreme Court (Doc. No. 6-1 at 54), which the Court dismissed on March 12, 2014 (Doc. No. 6-1 at 81);

(3)     An original petition filed on March 31, 2014 in the state court of appeals.  (Doc. No. 6-1 at 82).  The petition was dismissed as *res judicata* on August 15, 2014.  (Doc. No. 6-1 at 114).  Petitioner appealed to the Ohio Supreme Court, which affirmed the dismissal on July 14, 2015.  (Doc. No. 6-1 at 117).

It must be determined, then, when judicial review concluded for purposes of the second scenario described in *Ali*. Petitioner argues that review concluded on July 14, 2015, when the Ohio Supreme Court affirmed the court of appeals dismissal of his state petition. (Doc. No. 7 at 4). Petitioner maintains that this must be the case because it was only then that his claim was exhausted. (*Id.*)

Petitioner is correct that AEDPA's exhaustion requirement applies to challenges to state parole decisions. *See Brewer v. Dahlberg*, 942 F.2d 328, 337-39 (6th Cir. 1991). However, the exhaustion requirement is satisfied after the state's highest court has been given a full and fair opportunity to decide the petitioner's federal claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In this instance, the Ohio Supreme Court was presented with the claim Petitioner now raises on December 9, 2013, and it dismissed that claim on March 12, 2014. Thus, the claim was exhausted, and the limitations period would have began running on March 12, 2014 (assuming the second *Ali* scenario). The limitations period would have expired one year later on March 12, 2015. Therefore, Petitioner's federal habeas petition, filed April 28, 2016, is untimely.

Petitioner's subsequently filed state habeas petition in the Ohio Supreme Court **does not** trigger statutory tolling. As described above, a later filed appeal does not revive an already expired limitations period. See *Vroman*, 346 F.3d at 598.

Additionally, Petitioner has failed to establish that equitable tolling is warranted in this instance. AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 649 (2010). A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, **and** (2) that some extraordinary circumstance stood in his way'" that prevented the timely filing of the habeas

petition. *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). The burden is on a habeas petitioner to show that he is entitled to the equitable tolling of the one year limitations period. *Id.* In this case, Petitioner is not entitled to equitable tolling of the one year limitations period, because he has failed to argue or show that the circumstances of his case warranted equitable tolling.

In sum, whether the limitations period began running on June 9, 2011 (the administrative denial of parole) or March 12, 2014 (the conclusion of judicial review), Petitioner's federal habeas petition was filed too late.

### C. Cognizability

Even if the Petition were timely filed, Petitioner's claim is not cognizable on habeas review. A prisoner in state custody may only challenge his custody "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, federal habeas relief is only available if the state court proceedings deprived the petitioner of a right guaranteed by the Constitution or federal law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

When state courts have previously adjudicated the basis for a federal habeas claim, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite that reached by the Supreme Court of the United

States on a question of law, or if the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409–11.

Here, Petitioner's claim for relief is non-cognizable on habeas review. Petitioner was sentenced to a "term of life, without the possibility of parole until serving twenty (20) years." And he maintains that his federal constitutional rights were violated when the Ohio Parole Board changed "his aggregate sentence from '20 years' to '20 full years.'"

Petitioner is correct that documents generated by the Ohio Parole Board indicate Petitioner's sentence is "20 full years," in contrast to the entry of judgment which simply indicated "20 years." However, Petitioner's allegations of a constitutional violation being cognizable on habeas review has less to do with what is recorded in Parole Board documents, and more to do with whether Petitioner was granted a hearing at the time when one was constitutionally required. Petitioner was reviewed for parole suitability on September 9, 2005. He was found unsuitable for release. On October 11, 2011, after vacating the September 9, 2005 decision, the Ohio Parole Board held another hearing and again found him unsuitable for release.

If state law entitles an inmate to release on parole, that entitlement is a liberty interest which not to be taken away without due process. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). However, a unilateral expectation of the right to release on parole is not enough. *Id.* "The inmate must, instead, have a legitimate claim of entitlement to it." *Id.* "Only state law can create this 'legitimate claim of entitlement;' the

12

federal constitution protects such claims, but does not create them." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (1991).

In *Jago v. Van Curen*, 454 U.S. 14,15 (1981), an inmate was notified by the Ohio Parole Board that he had "earned the opportunity of parole and eventually a final release from [his] conviction." The inmate attended pre-release classes and was measured for civilian clothes. *Id.* After meeting with the inmate, the Parole Board decided to rescind the parole opportunity. *Id.* On habeas review, the U.S. Supreme Court concluded that the decision of the Ohio Parole Board did not constitute a legitimate claim of entitlement. *Id.* at 20.

Here, Petitioner fails provide a meaningful basis for the Court to decide that he had a legitimate claim of entitlement which should be afforded constitutional protection. "The law of Ohio gives a convicted person no legitimate claim of 'entitlement' to parole before the expiration of a valid sentence of imprisonment." *Inmates of Orient*, 929 F.2d at 235. It is not evident that Petitioner's valid sentence has expired or should be deemed expired here. And it is not evident that Petitioner's expectation of release was anything by subjective. Additionally, there is even less of an expectation of release in this case than that described in *Jago*. On September 9, 2005, the Ohio Parole Board considered Petitioner's parole suitability on the merits and denied him parole. Petitioner had no expectation of release based on this decision. Thus, the Parole Board could not have deprived him of any legitimate entitlement to release when it vacated that decision, since there was no expectation of release to begin with.

In sum, Petitioner fails to present a claim that is cognizable on habeas review.

### III. Conclusion

For the foregoing reasons, it is recommended that the Respondent's motion to dismiss be GRANTED.

                                              *s/ Jonathan D. Greenberg*
                                              Jonathan D. Greenberg
                                              United States Magistrate Judge

Date: September 20, 2016

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**